## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REGINA SMITH, | CIVIL ACTION |
| **Plaintiff,** | |
| | |
| v. | |
| | |
| NMC WOLLARD, INC., WOLLARD | NO.  19-5101 |
| AIRPORT EQUIPMENT, INC., | |
| WOLLARD EQUIPMENT CO., INC., | |
| NORTHWESTERN MOTOR CO., INC., | |
| DIVISION OF MOBILITY INC., | |
| STEINGART ACQUISITION CO., INC., | |
| CRITON TECHNOLGOIES WOLLARD | |
| AIRPORT EQUIPMENT COMPANY, | |
| HOBART BROTHERS, LLC, | |
| **Defendants.** | |

### MEMORANDUM OPINION

Plaintiff Regina Smith was injured while she was working on a piece of machinery known as a belt loader at the Philadelphia International Airport.  In her Second Amended Complaint, she raises products liability claims against the companies she alleges are responsible for the belt loader.  Hobart Brothers LLC, one of the defendants, has filed a Motion to Dismiss for lack of personal jurisdiction and failure to state a claim.

### I.     FACTUAL BACKGROUND[1]

Plaintiff was employed by American Airlines as a baggage handler at the Philadelphia International Airport.  On December 18, 2018, while at work, she was using a belt loader, a machine with a conveyer belt that assists in bringing luggage on and off of airplanes.  While doing so, she fell off the loader.  She struck the pavement below, which resulted in severe and

---

[1] At the motion to dismiss stage, all well-pleaded allegations in the Complaint are accepted as true and all reasonable inferences are drawn in favor of Plaintiff.  *See In re Rockefeller Ctr. Properties, Inc. Sec. Lit.*, 311 F.3d 198, 215 (3d Cir. 2002).

permanent injuries, including a spinal disc herniation, lumbar strains, and an ankle sprain, all of which have resulted in the need for ongoing treatment and continuing health problems.

Plaintiff alleges that the device was defectively made and that was the reason she fell. Specifically, she alleges that, amongst other problems, the belt loader lacked proper instructions, did not have adequate fall protection devices, was designed to operate at a dangerous angle, and was missing proper guardrails.  She brought claims against all defendants for strict product liability, negligence, breach of express and implied warranties of merchantability and fitness for ordinary and particular purpose, and vicarious liability.

## II.   LEGAL STANDARD

If a defendant challenges personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing jurisdiction is proper. *O'Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 316 (3d Cir. 2007).  When, such as here, no jurisdictional discovery was conducted, Plaintiff need only establish a prima facie case of personal jurisdiction.  *Kraus v. Alcatel-Lucent*, --- F. Supp.3d ----, 2020 WL 951082, at *3 (E.D. Pa. Feb. 27, 2020).  All of Plaintiff's allegations are accepted as true and all disputed facts are construed in her favor.  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003).

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  All that is considered are "allegations contained in the complaint, exhibits attached to the complaint and matters of public record," as well as a "concededly authentic document upon which the complaint is based" that is attached to a defendant's motion to dismiss.  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir.

1993). Factual allegations must be separated from mere legal conclusions and recitations of the element of the claim, as legal conclusions are not sufficient to state a plausible claim. *Iqbal*, 556 U.S. at 678.

### III.   DISCUSSION

#### A.  Personal Jurisdiction

Hobart argues that, as an Ohio company whose principal place of business is also in Ohio, this Court lacks personal jurisdiction over it. The Due Process Clause of the Fourteenth Amendment sets the outer bounds of a state's authority to proceed against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). Within those bounds, federal courts analyze whether personal jurisdiction is authorized by the laws of the forum state. *Time Share Vacation Club v. Atl. Resorts, Ltd*., 735 F.2d 61, 63 (3d Cir. 1984). Pennsylvania's long-arm statute extends to grant jurisdiction over all persons "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). Thus the only question is whether jurisdiction is appropriate under federal Fourteenth Amendment jurisprudence. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 384 F. Supp.3d 532, 537 (E.D. Pa. 2019).

There are two basic forms of personal jurisdiction: specific and general. Specific jurisdiction grants a court authority over parties only for cases that arise out of particular transactions that occurred within the forum state. *Goodyear*, 564 U.S. at 919. Simply stated, specific jurisdiction requires: (1) that the defendant had sufficient "minimum contacts" with the forum state, and (2) that subjecting the defendant to the court's jurisdiction would comport with "traditional notions of fair play and substantial justice." *Toys "R" Us*, 318 F.3d at 451. In recent

years, specific jurisdiction has become "the centerpiece of modern jurisdiction theory." *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014).  General jurisdiction, on the other hand, has played a "reduced rule." *Id.*  When a court has general jurisdiction over a party, that means lawsuits arising from *any* transaction can be brought against the party in that state – regardless of whether the transaction itself had any ties to the forum.  Because of the expansive scope of general jurisdiction, the requirements for finding it are more demanding.  *See Goodyear*, 564 U.S. at 927.  It is generally found only where the defendant can be "fairly regarded as at home." *Damlier*, 571 U.S. at 137.  For a corporation, such as Hobart, that typically means its place of incorporation or its principal place of business.  *Id.*

A court can, however, acquire jurisdiction over a party one final way: through that party's consent.  *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).  "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Id.*  Consent most frequently arises in the contract setting – parties can negotiate in advance to litigate any disputes arising from their agreement in a specific forum.  *See, e.g.*, *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964).  The Supreme Court has also "upheld state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures." *Ins. Corp. of Ireland*, 456 U.S. at 703 (citing *Adam v. Saenger*, 303 U.S. 59, 67-68, (1938) ("There is nothing in the Fourteenth Amendment to prevent a state from adopting a procedure by which a judgment in personam may be rendered in a cross-action against a plaintiff in its courts. . . .  It is the price which the state may exact as the condition of opening its courts to the plaintiff.")).

Pennsylvania has such a law authorizing personal jurisdiction over corporations based on consent. Under Pennsylvania law, any out-of-state company must register as a foreign corporation before it can do business in the state. 15 Pa. C.S.A. § 411(a). And pursuant to its jurisdiction statute, "*qualification as a foreign corporation* under the laws of this Commonwealth" constitutes "a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise *general personal jurisdiction* over such person." 42 Pa. C.S.A. § 5301 (emphasis added). Thus according to the statute, by registering as a foreign corporation in Pennsylvania, the corporation is subjecting itself to the general jurisdiction of the courts of Pennsylvania. *See Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991). The Third Circuit held in *Bane v. Netlink* that this provision represented, in effect, a "third" path to acquiring jurisdiction: because the party consented to jurisdiction by registering as a foreign corporation, there was no need to analyze the company's contacts with the state. *Id.* The application for certification as a foreign corporation is sufficient. *Id.* at 641.

Hobart, however, argues that *Bane* is no longer good law and Pennsylvania's statute requiring all foreign corporations who wish to register to do business in the state to consent to general jurisdiction is unconstitutional. According to Hobart, the Supreme Court's holding in *Damlier*, 571 U.S. 117, greatly curtailed the scope of general jurisdiction – general jurisdiction now *only* exists where a corporation's contacts with the forum are "so continuous and systematic as to render [it] essentially at home." *Id.* at 139 (internal quotation omitted, alteration in original). Merely registering as a foreign corporation, Hobart argues, is not and cannot be sufficient for general jurisdiction.

The continued viability of *Bane* and statutory consent to jurisdiction is complicated by the fact that *Damlier* itself only fleetingly refers to consent, noting that "[The Court's] 1952

decision in *Perkins v. Benguet Consol. Mining Co.* remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation *that has not consented to suit in the forum.*"  *Id.* at 129 (citing *Goodyear*, 564 U.S. at 928) (emphasis added).  *Damlier* is thus not purporting to change or even discuss consent to jurisdiction.  *See Bors v. Johnson & Johnson*, 208 F. Supp.3d 648, 653 (E.D. Pa. 2016).  But *Damlier* also does not provide any clarity as to whether its exacting definition of general jurisdiction, which applies only in jurisdictions where a corporation is "essentially at home," should impact what constitutes valid consent to personal jurisdiction, or whether a party now can ever consent to general jurisdiction.

      The Third Circuit has not revisited *Bane* since it was decided.  Both federal and state courts reviewing the constitutionality of Pennsylvania's statute requiring foreign corporations to consent to general jurisdiction in light of *Damlier* have reached differing conclusions.  The vast majority have held that *Bane* remains binding precedent.  *See, e.g.*, *Kraus*, --- F. Supp.3d ----, 2020 WL 951082, at \*5; *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp.3d 278, 298 (M.D. Pa. 2018); *Bors*, 208 F. Supp.3d at 653; *Webb-Benjamin, LLC v. Int'l Rug Grp., LLC*, 192 A.3d 1133, 1139 (Pa. Super. 2018), *rearg. denied* (Aug. 28, 2018).[2]  Recently, however, some courts have held Pennsylvania's statutory consent scheme unconstitutional.  *See In re Asbestos*, 385 F. Supp.3d at 541; *Reynolds v. Turning Point Holding Co., LLC*, 2020 WL 953279, at \*5 (E.D. Pa. Feb. 26, 2020); *Mallory v. Norfolk Southern Ry. Co.*, 2018 WL 3025283, at \*5 (Pa. Com. Pl. May 30, 2018).  Adding to the confusion is the Pennsylvania Superior Court's decision to withdraw pending *en banc* review an opinion that held the consent statute constitutional, *Murray*

---

[2] *See also Berk v. Equifax, Inc.*, 2020 WL 868128, at \*4 (E.D. Pa. Feb. 21, 2020); *Sciortino v. Jarden, Inc.*, 395 F. Supp.3d 429, 438 (E.D. Pa. 2019); *Youse v. Johnson & Johnson*, 2019 WL 233884, at \*3 (E.D. Pa. Jan. 16, 2019); *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, 2019 WL 1440046, at \*5 (E.D. Pa. Mar. 29, 2019); *Behrens v. Arconic, Inc.*, --- F. Supp.3d ----, 2019 WL 7172133, at \*8 (E.D. Pa. Dec. 20, 2019); *Aetna Inc. v. Mednax, Inc.*, 2018 WL 5264310, at \*5 (E.D. Pa. Oct. 23, 2018); *Hegna v. Smitty's Supply, Inc.*, 2017 WL 2563231, at \*4 (E.D. Pa. June 13, 2017).

*v. American LaFrance*, LLC, 2018 WL 4571804 (Pa. Super. Sept. 25, 2018), thus raising questions over whether the intermediate appellate court of Pennsylvania continues to view the statute as permissible under *Damlier*.

Pennsylvania's statute is unique in a key respect relative to other state provisions that attempt to exert general jurisdiction over out-of-state companies: it explicitly informs corporations that, by registering, they will be subject to the state's general jurisdiction.  For example, the Second Circuit, in striking down a similar Connecticut statute, noted that the "Connecticut statute, in contrast [to the Pennsylvania statute], gives no notice to a corporation registering to do business in the state that the registration might have the sweeping effect" of subjecting it to the state's general jurisdiction.  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 637 (2d Cir. 2016); *see also Display Works, LLC v. Bartley*, 182 F. Supp.3d 166, 175 (D.N.J. 2016) (holding that a foreign company did not consent to general jurisdiction in New Jersey by registering in the state and noting that, unlike Pennsylvania's, the law does not contain an explicit consent provision).  Because "Pennsylvania's statute specifically advises the registrant of the jurisdictional effect of registering to do business," a corporation that then chooses to register submits to general jurisdiction willingly.  *Bors*, 208 F. Supp.3d at 655.  And as has been long-established, a party may "consent to the personal jurisdiction of the state court [through] the voluntary use of certain state procedures."  *Ins. Corp. of Ireland*, 456 U.S. at 703; *see also Sciortino*, 395 F. Supp.3d at 439 (holding that "because Pennsylvania's registration statute explicitly advises foreign corporations of the jurisdictional effect of registering to do business in the Commonwealth," a foreign company that registers has consented to jurisdiction).

As other courts in this district have noted, however, consent is valid only if it is given both knowingly and *voluntarily*.  *See In re Asbestos Prod.*, 384 F. Supp.3d at 538.  Under

Pennsylvania's statutory scheme, a company is left with a binary choice: "consent" to general jurisdiction or be denied the benefits of doing business in the state. *Id.* at 541. Such a decision, it can be argued, does not give companies a meaningful choice; instead, it conditions the benefit of certain privileges of doing business in Pennsylvania on the surrender of *Damlier*'s constitutional right to be subjected to general jurisdiction only in the place where the company is "at home." *Id.*; *see also Mallory*, 2018 WL 3025283, at *5. Under *Damlier*'s more rigorous and narrow conception of general jurisdiction, such "consent" may not hold up.

Ultimately, however, *Damlier* presented the narrow question of "whether a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary," *Damlier*, 571 U.S. at 134, and the broader scope of its impact, if any, on consent jurisdiction remains unsettled. "[P]recedents set by the higher courts . . . are conclusive on the lower courts, and leave to the latter no scope for independent judgment or discretion." *Allegheny Gen. Hosp. v. N.L.R.B.,* 608 F.2d 965, 970 (3d Cir. 1979). There are only limited circumstances when a lower court cannot follow what would otherwise be binding precedent: "a change [made by a higher authority] in the legal test or standard governing a particular area is a change binding on lower courts that makes results reached under a repudiated legal standard no longer binding." *Planned Parenthood of Se. Pa. v. Casey*, 947 F.2d 682, 698 (3d Cir. 1991), *aff'd in part, rev'd in part*, 505 U.S. 833 (1992). In such instances, even if the older precedents were not explicitly overruled, lower courts must implement the new rule, not the repudiated one. *See id.* But *Damlier*'s acknowledgement of consent jurisdiction – that *Perkins* "remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum," *Damlier*, 571 U.S. at 129 – suggests that an entity may still consent to general jurisdiction. Whether the Supreme Court envisioned consent to only apply in the more

8

conventional cases, such as when a contract stipulates to specific jurisdiction over any claims arising from the agreement, *see, e.g.*, *Nat'l Equipment*, 375 U.S. at 316, and whether the Court intended its requirement that a corporation be "at home" in order to be subject to general jurisdiction to abrogate its ability to consent to jurisdiction, remains an open question. *Damlier*'s fleeting reference to consent and discussion of general jurisdiction in the *absence* of consent, thus, did not "radically alter[] the legal landscape which gave rise to" *Bane*, *see Reich v. D.M. Sabia Co.*, 90 F.3d 854, 858 (3d Cir. 1996), and does not conclusively overrule *Bane*. Thus, because this Court remains bound by *Bane*'s holding that a foreign corporation that registers in Pennsylvania is subject to the state's general jurisdiction, and because Hobart registered in the state, this Court has jurisdiction over Plaintiff's claims.[3]

### B.  Causation and Liability

Hobart next argues that, even if this Court has jurisdiction over it, Plaintiff fails to state a viable claim because Hobart did not manufacture the belt loader at issue, and Plaintiff pleads no facts showing that Hobart is responsible in any way for the loader. Thus, Hobart argues, all of Plaintiff's claims fail because she cannot show Hobart caused her injuries. *See Warnick v. NMC-Wollard, Inc.*, 512 F. Supp.2d 318, 330 (W.D. Pa. 2007) (holding that, even if the plaintiff showed that the defendant's product was unreasonably dangerous, plaintiff could not proceed to trial unless she showed that "a particular Defendant's loader actually caused their injuries").

---

[3] Hobart also argues that, even if Pennsylvania's consent law is valid, Hobart registered in 1969, before statutory amendments to the law made it explicit that a company that registered as a foreign business was subjecting itself to the state's general jurisdiction, and thus it cannot be said to have consented. However, a review of Hobart's records filed with the Pennsylvania Department of State reveals that, in November 2017, Hobart "transferred" its registration, which occurs when a foreign association merges with another non-registered foreign association, 15 Pa. C.S.A. § 418. *See City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) (allowing courts to take judicial notice of public records). In order to effectuate such a transfer, Hobart was required to file an application consistent with 15 Pa. C.S.A. § 418. By choosing to transfer its registration following its merger in 2017, after the law was explicit about the impact of such registration, Hobart consented to general jurisdiction. *See Gorton*, 303 F. Supp.3d at 300 (holding that a company that registered before the statute included an explicit consent provision, but then "remain[ed] qualified as a foreign corporation in the state," consented to jurisdiction).

Plaintiff identifies three potential ways in which Hobart may be liable in her Complaint: direct liability, successor liability, or vicarious liability.[4]  In her Response in Opposition to Hobart's Motion to Dismiss, however, Plaintiff concedes that Hobart is not directly liable for the belt loader, noting that "Plaintiff does not dispute that the [belt loaders at issue] were *manufactured* by Hobart's subsidiary, Wollard Airport Equipment Company."

Plaintiff likewise abandoned her theory of successor liability.  In her briefing, she quotes her Complaint, which includes the allegation that Hobart may be liable as a successor, but she actually discusses successor liability just once: in a footnote where she notes that, in *Waters*, a previous case against Hobart, the court held that another defendant also sued in this case, NMC-Wollard, could be held strictly liable for all belt loaders designed and manufactured by each of its predecessor entities.  *See Waters v. NMC-Wollard, Inc.*, 2007 WL 2668008, at *8 (E.D. Pa. September 5, 2007).  Plaintiff made no arguments, however, that *Hobart* may be subject to successor liability.  She thus has waived that issue.  *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived."); *United States v. Healy*, 2013 WL 1624310, at *1 (M.D. Pa. Apr. 15, 2013) ("[I]ssues not briefed are deemed waived.  Where a party makes no more than a single mention of the claim, the claim is consequently waived," citing *National RR Passenger Corp. v. Pennsylvania Pub. Utility Comm'n*, 342 F.3d 242 (3d Cir. 2003)).

That leaves only Plaintiff's claim that Hobart is vicariously liable for her injuries.  The Pennsylvania Supreme Court has adopted Section 400 of the Restatement of Torts, which provides that one "who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."  *Forry v. Gulf Oil Corp.*, 237 A.2d 593,

---

[4] Hobart also argued that Plaintiff failed to adequately plead a claim to pierce the corporate veil.  Plaintiff, however, does not raise veil piercing in the Complaint, and in her response to Hobart's Motion to Dismiss, reaffirmed that she does not seek to pierce the corporate veil.

599 (Pa. 1968) (quoting Restatement 2d, Torts § 400).  Under Pennsylvania law, a producer who "did not manufacture the product at issue and was not a supplier of the product participating in the chain of distribution [but] permit[ted] its name to appear on the equipment" can be held vicariously liable for the product.  *Brandimarti v. Caterpillar Tractor Co.*, 527 A.2d 134, 139-40 (Pa. Super. 1987); *see also Forry*, 237 A.2d at 599 (holding that a defendant who "had had its name embossed upon the casing" of the product at issue and put it "out as its own" can be subject to vicarious liability).

Plaintiff makes no allegations in her Complaint suggesting that Hobart's name was on the belt loader.  In her briefing, however, she argues that Hobart put its name on specific types of belt loaders.  To support her argument, she includes several pictures of belt loaders and raises numerous new allegations about Hobart (and other defendants), none of which appear in the Complaint. It remains to be seen whether the photographs and documents she attaches can support a claim for vicarious liability.  But as it stands in Plaintiff's Complaint, her allegation that Hobart is vicariously liable is "no more than [a] conclusion[]" that is "not entitled to the assumption of truth," and insufficient to state a claim.  *Iqbal*, 556 U.S. at 678.  Thus, as Plaintiff has failed to sufficiently allege that Hobart is liable for the product she alleges caused her injuries, her Complaint shall be dismissed.

IV.     <u>**CONCLUSION**</u>

For the foregoing reasons, Hobart's Motion to Dismiss for lack of jurisdiction shall be denied, and Hobart's Motion to Dismiss for failure to state a claim shall be granted but without prejudice to file an amended complaint.

11

April 24, 2020                                   BY THE COURT:


                                                /s/Wendy Beetlestone, J.


                                                _____
                                                WENDY BEETLESTONE