**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **REGINA SMITH,**<br>　　　　　　　**Plaintiff,**<br><br>　　　**v.**<br><br>**NMC WOLLARD, INC., WOLLARD**<br>**AIRPORT EQUIPMENT, INC.,**<br>**WOLLARD EQUIPMENT CO., INC.,**<br>**NORTHEASTERN MOTOR CO., INC.,**<br>**HOBART BROTHERS COMPANY,**<br>**NORTHWESTERN MOTOR CO., INC.,**<br>**DIVISION OF MOBILITY INC.,**<br>**STEINGART ACQUISITION CO., INC.,**<br>**CRITON TECHNOLOGIES WOLLARD**<br>**AIRPORT EQUIPMENT COMPANY,**<br>　　　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  19-5101** |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Regina Smith, an airport baggage handler, alleges she sustained serious injuries

when she was pulled from an aircraft's cargo hold onto a mechanical belt loader and then fell to

the airport tarmac below.  Smith brought this product liability suit, claiming her fall was caused

by a defective belt loader designed and manufactured by Defendant Wollard International, LLC

("Wollard").  Pursuant to Federal Rule of Civil Procedure 56, Wollard moves for summary

judgment on Smith's negligence and strict liability claims.[1]  Wollard also moves to exclude the

testimony of Smith's liability expert under Federal Rule of Evidence 702.  For the reasons that

follow, the Motions will be denied.

**I.      BACKGROUND**

On December 18, 2017, seasoned American Airlines baggage handler Regina Smith

sustained serious injuries when she fell out of the cargo hold of an airplane at the Philadelphia

---

[1] Smith has voluntarily withdrawn her claims for Breach of Warranty and Vicarious Liability, which
claims will therefore be dismissed.

International Airport.  Before the accident, Smith was sitting inside the cargo hold of the airplane loading baggage onto a belt loader.  A belt loader is essentially an inclined conveyor belt that is driven up to the side of an aircraft and used to load and unload luggage and cargo from the plane. It also serves as a ramp for baggage personnel to enter and exit the aircraft.  As Smith unloaded a particularly heavy piece of baggage onto the belt loader, she became unstable and the weight of the bag pulled her out of the airplane and onto the belt loader.  She then fell off the left side of the belt loader and onto the paved tarmac more than six feet below, sustaining serious and permanent injuries.

Smith claims that the belt loader at issue was a Model TC-888 designed, manufactured, and sold by Wollard or one of its predecessors.[2]  The Wollard TC-888 has a collapsible guardrail on the right side only and no guardrail on the left side, from which Smith fell.  Smith brought this products liability suit alleging that the lack of a left-side guardrail was a defect in the TC-888 because a proper left-side guardrail would have blocked her from falling or given her something to grab onto to prevent herself from falling.  She also alleges that Wollard failed to include adequate warnings regarding the risk of falls while using the belt loader.

## I.   SUMMARY JUDGMENT

Smith brings claims for negligence and strict liability, alleging her injuries were caused by the defective Wollard TC-888 belt loader.[3]  *See Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 709 (3d Cir. 2018) ("Under Pennsylvania law, a seller may be liable in strict liability

---

[2] The parties agree that the correct defendant is Wollard International, LLC, a wholly owned subsidiary of Wollard Holdings, LLC, and that Wollard International has inherited the liability of its now-defunct corporate predecessors.  *See Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106, 107 (Pa. Super. 1981) (explaining that a successor company acquires liability where "the purchasing corporation is merely a continuation of the selling corporation").  Wollard concedes it would be liable if Smith succeeds on her claims.

[3] The parties agree that Pennsylvania law applies to these claims.

2

and negligence for injuries caused by its defective products.").  Pursuant to Federal Rule of Civil

Procedure 56, Wollard moves for summary judgment on both of Smith's claims.

### A.  Legal Standard

"[S]ummary judgment is appropriate where there is no genuine issue as to any material

fact and the moving party is entitled to a judgment as a matter of law."  *Alabama v. North*

*Carolina*, 560 U.S. 330, 344 (2010) (internal quotations marks and citations omitted).  "A

genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could

rationally find in favor of the non-moving party in light of [the] burden of proof."  *Doe v.*

*Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).  In ruling on a summary judgment

motion, a court must "view the facts and draw reasonable inferences in the light most favorable

to the party opposing the summary judgment motion."  *Scott v. Harris*, 550 U.S. 372, 378 (2007)

(internal quotations marks and alterations omitted).  However, "unsupported assertions,

conclusory allegations, or mere suspicions" are insufficient to create an issue of fact and defeat

summary judgment.  *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp.2d 490, 493 (E.D.

Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).  A

plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his

pleadings, but rather must present competent evidence from which a jury could reasonably find

in her favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Finally, "[c]redibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions" not to be resolved by the court at summary judgment.  *Id.* at 255.

### B.  Discussion

According to Wollard, it is entitled to summary judgment because Smith has not

established: 1) that a Wollard TC-888 belt loader was involved in her accident; 2) that the lack of

a left-side guardrail caused her injuries; or, 3) that the TC-888 belt loader was unreasonably

dangerous and therefore defective.  In strict liability actions for defective products, Pennsylvania

follows Section 402A of the Restatement (Second) of Torts.  *Sikkelee*, 907 F.3d at 709 (citing

*Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 394-99 (Pa. 2014)).  To prevail on such a claim, a

plaintiff must prove: "(1) that the product was defective; (2) that the defect was a proximate

cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the

product left the seller's hands."  *Id.* at 710 (internal quotation marks and citations omitted).

Pennsylvania also recognizes negligence actions stemming from defective products.  *See*

*Tincher*, 104 A.3d at 389-90.  To make out a negligence claim, the plaintiff must show: "(1) that

the defendant had a duty to conform to a certain standard of conduct; (2) that the defendant

breached that duty; (3) that such breach caused the injury in question; and (4) actual loss or

damage."  *Sikkelee*, 907 F.3d at 710 (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008

(Pa. 2003)).  Wollard's challenges to Smith's negligence and strict liability claims will be

considered together.[4]

### *1. A reasonable jury could find that a Wollard TC-888 was involved in Plaintiff's accident.*

First, Wollard seeks summary judgment because Smith has not adduced evidence that she

was working with a belt loader designed and manufactured by Wollard when she was hurt.

---

[4] As a general principle, "negligence and strict liability are distinct legal theories" that are treated separately because "[s]trict liability examines the product itself, and sternly eschews considerations of the reasonableness of the conduct of the manufacturer[,]" whereas "a negligence cause of action revolves around an examination of the conduct of the defendant." *Phillips*, 841 A.2d at 1008.  Here, however, Wollard challenges Smith's negligence claim only for lack of causation, which is a common element of both causes of action. *See Warnick v. NMC-Wollard, Inc.*, 512 F. Supp.2d 318, 330-31 (W.D. Pa. 2007) (explaining, in a products liability action asserting both strict liability and negligence claims, that "[b]ecause proof of causation is an essential element of the torts Plaintiffs allege here, their failure to adduce sufficient evidence of causation would doom [both] of their claims."); *see also Sikkelee*, 907 F.3d at 715-16 (addressing together Pennsylvania products liability claims for negligence and strict liability where the issues on summary judgment were, *inter alia*, proximate causation and defectiveness of the product).

Pennsylvania law requires a plaintiff to establish that a particular manufacturer's or supplier's product caused her injuries. *See Payton v. Pa. Sling Co.*, 710 A.2d 1221, 1225-26 (Pa. Super. 1998) (citation omitted); *see also Warnick*, 512 F. Supp.2d at 329 (dismissing negligence and strict products liability claims for lack of causation where plaintiff could not identify the manufacturer of an allegedly defective belt loader). In cases where the exact product at issue is not available for inspection, "a plaintiff may prove identification through circumstantial evidence. That is, the failure to produce the product and, thus, offer direct evidence of the manufacturer's identity does not automatically bar a plaintiff's recovery. The determination of whether a plaintiff has produced sufficient circumstantial identification evidence is factual and, thus, case-specific." *Payton*, 710 A.2d at 1224 (citing *O'Donnell v. Big Yank, Inc.*, 696 A.2d 846 (Pa. Super. 1997); *see also Waters v. NMC-Wollard, Inc.*, 2009 WL 51313, at *13 (E.D. Pa., Jan. 6, 2009) (explaining that the use of circumstantial evidence is especially apt "in design defect cases, where a plaintiff attacks the safety of an entire product line rather than the manufacturing of one product from within a product line" (internal quotation marks and citations omitted)).

The threshold of evidence required to put the issue of identification to the jury is demarcated by two Pennsylvania Superior Court cases, *DeWeese* and *O'Donnell*. In *DeWeese*, a busboy was injured by an exploding glass pitcher and sued two of the manufacturers and sellers who supplied pitchers to his employer. *DeWeese v. Anchor Hocking Consumer & Indus. Prods. Gp.*, 628 A.2d 421, 422 (Pa. Super. 1993). The employer used pitchers from several companies, however, and the busboy could not identify the particular manufacturer or type of pitcher involved in the accident. *Id.* at 423-24. With "no testimony or reliable document" identifying the pitcher, the Pennsylvania Superior Court affirmed the grant of summary judgment to the

5

defendants because "there is simply no evidence tending to establish that the pitcher involved in this case was manufactured by" the defendants. *Id.* at 423-24.

In contrast, the Pennsylvania Superior Court reversed a grant of summary judgment in *O'Donnell*, finding sufficient circumstantial evidence for the jury to decide the identification issue. *O'Donnell*, 696 A.2d at 850. There, a plaintiff sued the manufacturer and distributor of his pants after they caught fire and burned him. *Id.* at 847-48. While the exact pair of pants involved in the accident was discarded, plaintiff produced other pairs manufactured and sold by the defendants. *Id.* at 849-50. The plaintiff's wife testified that she purchased the pants produced for inspection at the same time as the destroyed pair and that they were "exactly the same make of the ones" worn during the accident. *Id.* at 850. The court distinguished *DeWeese* because O'Donnell was prepared to offer some evidence as to the manufacturer and seller of the pants. *Id* at 850. While defendants could seek to prove a misidentification at trial, the plaintiffs "cannot . . . be deprived of the opportunity to present their case before a jury under these circumstances." *Id.* In short, "[b]ecause there was evidence offered identifying [defendants] as the manufacturer and seller of the pants, it was inappropriate for the court to enter summary judgment." *Id.*

Although this case falls somewhere between the dearth of evidence offered in *DeWeese* and the positive identification offered in *O'Donnell*, there is ultimately enough identification evidence to create a material issue of fact for the jury. At the time of Smith's accident, American Airlines was using at least 85 belt loaders manufactured by three different companies, including Wollard. The American Airlines incident report regarding Smith's accident does not identify or include photos of the belt loader in use at the time of her accident. In written discovery, Smith identified the belt loader at issue as the TC-888, manufactured exclusively by Wollard. At her

deposition, however, Smith was unable to directly identify Wollard as the manufacturer or the TC-888 as the model of the belt loader involved in her accident.  Wollard takes particular issue with the following exchange:

> **Wollard's counsel**: Okay. Do you know what a TC-888 belt loader is?
> **Smith**: No.
> **Wollard's counsel**: Do you have any idea if American Airlines was using a TC-888 belt loader back in December 2017?
> . . .
> **Smith**: I don't even know what that is.

Moreover, when shown a photo she took of a TC-888 belt loader, Smith did not know the model or manufacturer.  In fact, she disclaimed that the belt loader in the photo was the one involved in her accident because it had black bars on the front.

Nevertheless, Smith has offered sufficient circumstantial evidence for a reasonable jury to find that she was using a Wollard TC-888 belt loader at the time of her accident.  Unlike the *DeWeese* plaintiff—who not only could not name the manufacturer of the pitcher but also "acknowledged that he did not choose a particular type of pitcher" that day—Smith describes identifying features of the belt loader at issue.  *DeWeese*, 628 A.2d at 423-24.  She described the color and shape of the belt loader.  And, although she did not know the manufacturer or model, she distinguished between the only two styles of belt loader that she used at American Airlines in 2017—"[t]he skinny one and the fat one"—and testified that she was using a skinny belt loader at the time of her accident.  On September 23, 2020, Smith identified the exemplar TC-888 belt loader produced for inspection by her liability expert as the "skinny" style belt loader involved in her accident.[5]

---

[5]  The parties' debate over whether this identification was hearsay is much ado about nothing.  "In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of

At her deposition about a week later, Smith confirmed that the only differences between the model TC-888 used for the inspection and the belt loader involved in her accident were the paint color—the inspected belt loader was blue whereas the one involved in her accident was gray—and the extended guardrail.  The inspected belt loader featured a different guardrail because American Airlines had replaced the former guardrails with extended guardrails.  Smith also testified that she had used this type of belt loader every day during her sixteen-year tenure as baggage handler, lending credence to her identification.  Any inconsistencies in Smith's identification that Wollard points to—like the color or whether the belt loader involved in her accident had a yellow step near the driver's wheel—are fodder for cross-examination and not grounds for summary judgment.  As the court in *O'Donnell* explained, Defendant is free to challenge Smith's identification at trial, but such issues of credibility and weight of the evidence are properly reserved for trier of fact.  *O'Donnell*, 696 A.2d at 850 ("At trial [defendants] can offer a defense which seeks to prove that Mrs. O'Donnell has misidentified them as responsible parties. . . . This evidence can all be presented before a jury, which can accept or reject it.").

Because a reasonable jury could conclude from the evidence in the record and Smith's testimony at trial that she fell from a Wollard TC-888 belt loader, the motion for summary judgment on these grounds will be denied.

> ### 2. *A reasonable jury could conclude that the lack of a left guardrail caused Plaintiff's accident.*

admission at trial." *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000); *see also Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) ("In ruling on a motion for summary judgment, the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial." (citing Fed. R. Civ. P. 56)).  If at trial Smith again identifies the exemplar TC-888 as the "skinny" belt loader involved in her accident, Defendant may, of course, cross-examine her regarding any inconsistencies in her identification.

Next, Wollard argues that the lack of a left-side guardrail did not cause Smith's injuries because handrails on belt loaders do not provide fall protection for people located inside the aircraft. According to Wollard, the guardrails are intended to provide fall protection to people using the belt loader as a walkway, not for people loading baggage from inside the cargo hold, such as Smith. Smith, on the other hand, contends that she would not have fallen from the belt loader to the tarmac more than six feet below had the Wollard TC-888 been equipped with a left-side guardrail system. She testified that had she been on the right side of the belt loader, the guardrail would have stopped her from being pulled onto the belt loader and that, also, a left side guardrail would have given her something to grab onto and prevent her fall. Smith's engineering expert, Peter J. Poczynok,[6] likewise concluded that a proper guardrail—which, according to him, should have extended to the leading edge of the belt loader and had an intermediate rail to prevent passage underneath the top rail—would have blocked Smith's fall. This opinion is based on the physical dimensions of the TC-888 belt loader and the cargo door of the Airbus A320, from which Smith fell. The expert also opines that Smith could have grasped a guardrail with her hand to prevent her fall.

Smith's expert witness, as well as Wollard's Chief Engineer in his deposition testimony, suggest that this type of accident is a foreseeable risk to users of the belt loader. As Smith's expert opines, the design of the TC-888 draws baggage handlers near the edge of the open cargo hold to load and unload baggage, creating a foreseeable fall risk. Wollard's Chief Engineer conceded that it is foreseeable that a person could become unstable while loading or unloading baggage of various sizes from the cargo hold, which is a proper and intended use of the belt

---

[6] Defendants challenge Poczynok pursuant to *Daubert v. Merrell Dow Pharm.,* 509 U.S. 579, 587-89 (1993) which challenge, for the reasons set forth below, fails.

loader.  Yet, the Chief Engineer was unaware of any preventative safety features or warnings

directed towards this risk on the TC-888 belt loader.  Smith has therefore produced evidence

from which a reasonable jury could determine that the lack of a left side guardrail on the TC-888

was the factual and proximate cause of her injuries.[7]

### 3. A reasonable jury could conclude that the Wollard TC-888 was defective under Pennsylvania law.

Finally, assuming a Wollard TC-888 belt loader was in use at the time of the accident,

Wollard argues that Smith cannot show that it was unreasonably dangerous and therefore

defective.  The Restatement (Second) of Torts § 402A imposes liability on the manufacturer or

seller "of any product in a defective condition unreasonably dangerous to the user or consumer."

In *Tincher*, the Supreme Court of Pennsylvania held that a plaintiff may show such a defective

condition through "either a 'consumer expectations' or 'risk-utility' theory, or both."  *Tincher*,

104 A.3d at 426.  Although Smith contends that the Wollard TC-888 is defective under both

frameworks, Wollard challenges only the risk-utility standard in its Motion for Summary

Judgment.[8]

Under the risk-utility standard, "a product is in a defective condition if a reasonable

person would conclude that the probability and seriousness of harm caused by the product

---

[7] To the extent Wollard disputes whether Smith came into contact with the belt loader at all before falling to the tarmac, Smith testified in her deposition that she was pulled out of the aircraft and onto the belt loader before she fell to the tarmac.  Wollard is not entitled to summary judgment in the face of Smith's direct testimony regarding the incident.

[8] Likewise, Wollard does not challenge Smith's claim that the TC-888 was defective under a failure-to-warn theory of liability.  *See Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170 (Pa. 1995) (explaining that three types of defective conditions give rise to strict products liability claims: design defects, manufacturing defects, and failure-to-warn defects).  As a preliminary matter therefore, Smith may proceed to trial on her consumer expectations and failure-to-warn theories of defectiveness.

outweigh the burden or costs of taking precautions." *Id.* at 397 (internal quotation marks

omitted).  The standard is evaluated by balancing seven non-dispositive factors:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.

> (2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.

> (3) The availability of a substitute product which would meet the same need and not be as unsafe.

> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

> (5) The user's ability to avoid danger by the exercise of care in the use of the product.

> (6) The user's anticipated awareness of the dangers inherent in the product and their availability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

> (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*Id.* at 389-90 (citation omitted).  Moreover, whether a product is defective "is a question of fact

ordinarily submitted for determination to the finder of fact; the question is removed from the

jury's consideration only where it is clear that reasonable minds could not differ on the issue."

*Id.* at 335.

The thrust of Wollard's argument is that because American Airlines would not have

purchased a belt loader with two guardrails, Smith has failed to point to a feasible alternative

design.[9]  The very premise of this argument, however, is a disputed material fact.  Wollard

---

[9] Wollard also argues, in a single sentence, that the second, fifth, and sixth factors weigh against Smith because she was not actually using the belt loader at the time of her injury.  Whether Smith—an airport baggage handler loading baggage onto a device undisputedly used to load and unload luggage and cargo

claims that American Airlines owned no two-railed belt loaders at the Philadelphia International Airport because certain cargo and baggage would not fit on them.  Yet, Smith and another American Airlines employee testified that they had seen American Airlines use belt loaders with two rails.  Moreover, American Airlines' purchasing preference is not dispositive on the issue of whether it is feasible for Wollard to implement a safer alternative design.  Wollard's Chief Engineer testified that Wollard has offered a left-side guardrail on every model of the TC-888 since 1999, and first installed such a guardrail that same year.  The Wollard product catalogue offers to install guardrails on both sides of the TC-888 of the exact variety recommended by Smith's expert.  Wollard's Chief Engineer conceded that no major modifications to the TC-888 were needed to install such guardrails.  The design suggested by Smith is therefore feasible in that sense that Wollard can—and does—manufacture belt loaders with guardrails on both sides that extend all the way to the cargo hold.  That American Airlines preferred belt loaders with a single guardrail goes toward the burden and cost of taking such a precaution—as embodied in the third and fourth factors above—but it is not the *sine qua non* of the risk-utility analysis. There are therefore triable issues of fact relevant to the risk-utility analysis, such as probability and severity of injuries caused by the TC-888, the utility of the TC-888 with dual guardrails, and the costs of implementing such an alternative design.  Wollard's motion for summary judgment will therefore be denied as to all Smith's claims.

## II.    WOLLARD'S *DAUBERT* MOTION

As referenced *supra*, Smith proffers Peter J. Poczynok, a mechanical engineer, as a liability expert.  Based primarily on his inspection of a model Wollard TC-888 belt loader and review of the depositions and evidence in this matter, Poczynok authored an expert report and a

---

from airplanes—was actually using the belt loader at the time of her accident is a question of fact for the jury.

rebuttal report in support of Smith's negligence, strict liability, and failure-to-warn claims.

Wollard moves to exclude Poczynok's expert reports and testimony pursuant to Federal Rule of

Evidence 702.

### A. Legal Standard

The Federal Rules of Evidence govern the admission of expert opinions in a federal case.

*Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 587-89 (1993); *United States v. Schiff*, 602 F.3d

152, 172-73 (3d Cir. 2010).  Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "The Federal Rules of Evidence embody a strong and undeniable preference

for admitting any evidence having some potential for assisting the trier of fact."  *Holbrook v.*

*Lykes Bros. S.S. Co.*, 80 F.3d 777, 780 (3d Cir. 1996) (internal quotation marks omitted).  The

party offering the expert testimony bears the burden of establishing the admissibility of the

opinions by a preponderance of the evidence.  *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir.

2000).

Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability

and fit."  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  Here,

Wollard contends that Poczynok's opinion is not reliable.  To be reliable, expert testimony must

be "based on methods and procedures of science, not on subjective belief and unsupported

speculation." *UGI Sunbury LLC v. Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833-34 (3d Cir. 2020). The district court therefore must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The Third Circuit has consistently maintained that the standard for reliability is "not that high" and is "lower than the merits standard of correctness." *In re Paoli*, 35 F.3d at 744-45. In that regard, "[a] court should not . . . usurp the role of the fact-finder; instead, an expert should only be excluded if the flaw is large enough that the expert lacks the good grounds for his or her conclusions." *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig*., 858 F.3d 787, 792-93 (3d Cir. 2017) (internal punctuation omitted).

## B. Discussion

Poczynok conducted an inspection of an exemplar American Airlines Wollard TC-888 at the Philadelphia International Airport on September 23, 2020. Based on this inspection, his review of the relevant depositions and record evidence, and the application of generally accepted engineering principles, Poczynok reached several conclusions set forth in his expert report. Poczynok opines, *inter alia*, that the TC-888 was a "walking-working surface" under Occupational Safety and Health Administration (OSHA) standards and yet failed to comply with fall protection requirements applicable to such devices; that the Wollard TC-888 was defective and unreasonably dangerous because the lack of a left-side guardrail exposed users to an unprotected fall hazard; and, that a guardrail of the alternative design described in his report would have prevented Smith's fall. Poczynok also submitted a rebuttal report responding to the opinions of Wollard's defense experts. Therein, Poczynok reaffirms his conclusion that:

> Had the subject belt loader been equipped with proper railing systems on both sides of the conveyor bed at the time of [] Smith's incident that were at least forty-two inches tall, were of sufficient length to reach the leading edge of the conveyor bed, and which included a midrail or similar configuration to prevent passage of an individual beneath the top rail, the progress of her fall would have been arrested at the belt loader.

Wollard contests primarily the reliability of Poczynok's expert opinions.[10]  Specifically, Wollard submits that Poczynok's reports and testimony are inadmissible because his testimony is not based on sufficient facts and data, and he did not use a reliable or objective methodology in formulating his opinions.  According to Wollard, Poczynok's failure to conduct independent testing to prove that a guardrail would have prevented Smith's fall renders his opinion speculative.

To the contrary, Poczynok's opinions are based on sufficient facts and data to render his testimony admissible.  Poczynok relied primarily on his personal inspection of an exemplar TC-888 owned by American Airlines and the ample factual evidence in the record.  Wollard's argument that Poczynok did not inspect or physically examine the correct type of belt loader, as addressed *supra*, is a disputed fact for the jury to determine and not a basis to exclude Poczynok's testimony.  In addition, Poczynok based his opinions on OSHA safety standards, industry practices, and his expertise in engineering principles.  That OSHA standards govern workplace conditions and therefore impose duties directly on American Airlines, the employer, and not Wollard, the manufacturer of workplace equipment, does not render them inapposite.  Nationally applicable design standards, such as OSHA guidelines, "represent important parameters for industrial design."  *Milanowicz v. The Raymond Corp.*, 148 F. Supp. 2d 525, 533

---

[10] Wollard does not, on the other hand, challenge Poczynok's qualifications.  Indeed, Poczynok has been a licensed professional engineer since 1999, earned a Bachelor of Science Degree in Mechanical Engineering and a Master of Science Degree in Mechanical and Aerospace Engineering, has experience in product design and development, and has worked in the forensic engineering field since 2006.  He is therefore qualified to opine on the design and safety features of the Wollard TC-888.

(D.N.J. 2001).  To wit, Wollard's Chief Engineer testified that Wollard consulted OSHA standards in designing its belt loaders to address fall hazards.  Here, OSHA standards may be relevant on disputed issues such as the safety features of the TC-888, the feasibility of an alternative design, and the foreseeability of a fall such as Smith's.

Poczynok's methodology likewise passes muster under the lenient reliability standard under Rule 702.  *See In re Paoli*, 35 F.3d at 744-45.  As aforementioned, Poczynok conducted an inspection of a model TC-888 and analyzed the belt loader according to the facts in the record, industry standards, and engineering principles.  For example, Poczynok elevated the TC-888 to the proper height to access the cargo hold of an Airbus A320 and took measurements based on Smith's testimony regarding the position of the belt loader and her fall.  Poczynok thereby concluded that "some part of [Smith's] body had to have passed over the conveyor of the belt loader and would therefore come into contact with and [be] restrained from falling by an appropriate railing system."  He defined an "appropriate railing system" according to OSHA standards and the suggested alternative Sage Ramptech handrail.  Wollard's contention that Poczynok should have conducted a more complete recreation or testing seeks to impose a standard higher than what is required under Rule 702.  *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 248 (3d Cir. 2008) (reversing the exclusion of an engineering expert in a products liability matter where the trial court found the expert unreliable, in part, for failure to conduct adequate testing).  Such critiques regarding Poczynok's methodology and conclusions are properly raised during cross-examination so that the jury may assess the weight and credibility of Poczynok's opinions.  *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Wollard also suggests that Poczynok's reports and testimony are inadmissible because they are not relevant, carry no probative value, and their prejudicial impact is high. *See* Fed. R. Evid. 401, 403. These arguments are merely a restyling of those already rejected herein. Poczynok's reports and testimony are potentially relevant and probative on central disputed issues in this case, including factual and proximate causation and the defectiveness of Wollard's design for the TC-888. That Wollard might find them damaging is not the meaning of prejudicial in this context. Wollard's motion to preclude Poczynok from testifying will therefore be denied.

## IV.    CONCLUSION

Because there are triable issues of fact with respect to the identification of the belt loader, its alleged defectiveness, and causation, Defendant's motion for summary judgment will be denied. Because Poczynok's reports and testimony are relevant and inadmissible pursuant to Federal Rule of 702, Defendant's *Daubert* motion will be denied.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

17